Good morning, Your Honor. Richard Grant on behalf of the Plaintiff Appellant, Eric Knoll. I was supposed to be here. Pardon? I was read. You know, if he's not buried, he's probably not far from it. I'm not sure. He's probably seen better days. Because he's not what? Buried. I don't know. We've lost count because he was sold to the other fellow. So we've lost track. Sold what? Sold where? The horse involved, Your Honor. He didn't retain visitation rights? This case involves a partnership interest and the extent to which an attorney can go to achieve. Who sold the horse? The defendant, Sandra Hall, sold it to her husband at a cattle auction for $710, I believe. Well, that's a lot of money for a horse. Yes. And in connection with that, can the attorney violate federal and state wiretap laws? Can he assist in the breach of fiduciary duties? And can he direct or procure others to assist with such activities? Before I get too far, I'd like to reserve five minutes if I could. Okay. We think that the trial court got it wrong in a number of ways, and in particular with regard to the wiretap statutes that are at issue in this case. Perhaps Yes, I believe that under Smith, U.S. v. Smith, the Ninth Circuit decision, under the circumstances in this case, that would be a violation of the wiretap law. I think the analogy is very similar here to Smith, where in Smith they did leave a voicemail message, someone correctly guessed the code, accessed it. That's still the original set of messages? Yes, it could be, because it does include in its stored form. I believe it's part of the same message. Yes, it seems to be a distinction without a difference. You could somehow take in Smith, we don't quite know exactly how it was recorded, if it was put onto a cassette recorder or a computer of some sort, a hard drive, but it shouldn't make a difference if someone physically takes the tape and then copies it, as opposed to going in and copying it when it is still held. I'm sorry, Your Honor? Yes. Well, the statute? Well, I think the it continues. Well, right. We think in this instance it would, the rights, the privacy rights would attach to the recording itself, regardless if it was in a voice message machine connected with a telephone or whether it was on a separate cassette recording, as was in this instance. It was still made under the circumstances at a business, and in this instance the proprietor had the expectation of privacy. The court, as you know, granted summary judgment. What language does it satisfy in the statute? I'm sorry, Your Honor? Well, under 18 U.S.C. 2510.1, wire communication includes electronic storage of such communication. It doesn't specify wire communication as any oral transfer made in whole or in part between the point of origin and the point of reception. Between the point of origin and the point of reception. Do you have that here? I believe so, Your Honor, because it was received at the same time as it was recorded. I don't think there's... If he had taken, the telephone message, of course, was received at his place of business, and he subsequently tape recorded that. And then if he took the tape recorder and transferred that into a written memo reciting the conversation in its entirety, would the written memo be protected under the wiretap statute? I believe it would depend on who made that writing. Well, the fellow that received the message in the first place. No, I don't believe so, because it would be, it's a, this applies to wire communication. Yeah, but why is that any different than the tape recording itself, which is separate and apart from the of the message? Because I think that under the definition, I just read, the includes electronic storage of such communication. It doesn't also say including any written storage or written memorandum of such communication. I think once it's in its stored form, if you will, that is Yeah, I believe these tape recordings were made simultaneously with the telephone call that was being received at that time. In other words, this was set up at a business so that incoming calls could be received by Mr. Knoll at his business for customers or clients with regard to scheduling writing lessons or with regard to software that he was preparing at the time for horse shows. So if someone had a question about it, they could call in and simultaneously with the telephone call, there would be a recording. So that, for instance, if somebody called up and said, I've got to appointment for next Wednesday, I want to move it to next Thursday, he would have a recording of that message. I suppose voicemail, if you, I don't think it would be different at all. I mean, if you, I don't think it's mechanically different. Isn't it voicemail? Well, these were, it is similar to voicemail. This is cassettes. This would be cassette tapes. Yeah. Yeah. You buy them for $10. Right. Exactly. You've seen them. Correct, Your Honor. And then you're sorry you ever bought them. Well, not necessarily. But as I understand your question, voicemail, I'm not sure of all the leaving a message and then I pick up the phone, it can still record the conversation between us if it's going at the time. And I don't see what the distinction or difference would be between my voicemail on my phone at home or at my office, for that matter, and a separate hooked up to the line tape recorder that made simultaneous tape recordings at the time in question. Was there evidence that these were simultaneously recorded? I don't believe there was any evidence to contradict that. I mean, was there any evidence to support it? I believe there was. I believe Mr. The issue of standing, I think, is under Gonzales decision by the Ninth Circuit. It's clear that Mr. The expectation of privacy over calls made to, from, and within the premises at the place in question, which was his business. And under Gonzales, he would have standing both for those calls to which he may have been a party and to those calls to which he may have not. Secondly, there's no evidence that he for that purpose alone. The undisputed evidence was that this was set up in connection with his business and was routinely done to record incoming and outgoing telephone calls. Secondly, with regard to violation of the act itself, we believe that Mr. Weiser, the attorney in question, went beyond the normal bounds and to assist him with interception of these communications. The court found in this instance that the crime-fraud exception applied, that the attorney-client privilege had been waived. He approached Lennertz, Ms. Lennertz, who was not a party to any of the prior proceedings and was only tangentially involved, and had her, procured her, or a client who referred another potential client to him. And he went back to... She called Mr. Weiser, correct. And they were concerned about what they had done was legal or not. He was concerned about the legality of breaking in and taking the tapes. But nevertheless, he directed her, Lennertz, because Ms. Hall didn't want to do it, to listen to the tapes, make copies, make summaries, and contact the people who were recognized on the phone conversations, if she knew, and advise them of what was going on. And under those circumstances, the court found in this instance that the crime-fraud exception applied, that the attorney-client privilege had been waived. I believe so. An issue came up with regard to, during deposition, as to whether or not conversations between the attorney and the clients before May 7th was protected by that privilege. And objections were made to any questions being asked of the attorney at any time prior to that date, although the court had previously ruled that the privilege had been waived, and we believe that under those circumstances... Actually, the court had ruled that on a motion to dismiss the complaint for failure to state a claim. Isn't that right? No, Your Honor. The court had ruled that on a motion, specifically a motion to compel discovery, and ruled in connection with that that the attorney-client privilege had been waived under the circumstances of this case. Oh, I'm thinking about a different issue. Yes, that was, and then in connection with that, the file materials were turned over and depositions were started. With regard to leave to amend, this case took longer. There was a previous appeal that took three years. The standard in the Ninth Circuit is to be applied with extreme liberality. Delay alone does not provide sufficient grounds for denying leave to amend. While the lack of prejudice to opposing party, the court should allow an amendment. It's important to point out here that the defendants in this case have not taken any depositions, period. They attended depositions. The plaintiff has taken of them, but as far as discovery goes, they have conducted virtually no discovery. Two of the defendants also have not answered, even answered at this time, the operative complaint that is the subject of the motion for summary judgment. So it would be of no prejudice to them if the court were, in fact, to allow an amendment of the complaint in question. There has been newly discovered evidence through the discovery process of the file. There's also been new case law. The Court of Appeals in the State of Washington specifically ruled that in this instance, Ms. Knoll and Mr. Hall, Ms. Hall and Mr. Knoll were involved in a partnership, a formal partnership. This court has also decided, United States v. John Anthony Williams, which a private citizen of a fiduciary relationship with a victim has a right to intangible rights to honest service. We raise the question. Yes, I will save it for after. Thank you. May it please the Court. Jonathan Rodmacher on behalf of Defendant Herb Weiser. The notion of voicemails as being relevant to this case is a red herring. This is not a system of setup where one person wants to communicate to another and leaves a voicemail. That's not what's at issue. This is a setup of, Mr. Knoll, illegal recording telephone conversations that are happening. The recordings are being made simultaneously with the telephone calls and that these recordings were made in a mobile home where Ms. Hall, Mr. Weiser's client, was living. She goes back into the mobile home, finds these Right, Judge. I think that from an interception standpoint, the question is then, you have legal recordings, Mr. Knoll's own telephone calls that he records, not illegal, and illegal recordings. He records telephone calls of two other people. And so I believe it is, Your Honor, because it's intercepting the call as it's happening. It's physically, as Mr. Knoll uttered a word, he was consenting to his own recording of his own telephone call. That was a legal recording of his own telephone call. So these tapes, you say, are covered by the statute? Well, covered by, I think the statute makes some things legal and some things illegal. I'm sorry if I misunderstand your question then about what simultaneously recording is. Do you believe that there perhaps was a call that came in and they recorded that on the tapes? He recorded. Yes. Mr. Knoll did that recording simultaneously with the calls. Some of the calls were his own. Some were other people's. The other people's calls, those were illegal recordings. They violated the Wiretap Act. He was civilly prosecuted and found liable. Mr. Weiser was the lawyer who the client says, my telephone calls have been recorded. He does the investigation. He files the claim. It's continued by another So that's the context in which this case comes to the court, that the wrongdoer is the person who seeks relief under the act designed to find him liable and for which he was found liable. He, though, says, but there's these other calls that were legally made. So the client says, oh, we're acquiring a tape from the property. Is that a violation of the Wiretap Act? No. To physically acquire a tape that's been made? No. Because then the petty burglar who breaks in and takes all the cassettes and CDs has suddenly violated the Federal Wiretap Act. It has nothing to do with intercepting communications. It has nothing to do with anything that the Wiretap Act is set out to do. Moreover, the Wiretap Act is set up to prosecute people who do this kind of thing. So that the lawyer who says to the client, the tape itself is evidence of a crime, but we're going to go after this guy, acting in concert with the client, under the Oregon case of Reynolds v. Schrock, under the fiduciary duty side claims, is exactly the kind of thing that a prosecuting lawyer, whether a prosecutor, a United States attorney or a State Attorney General, or a civil prosecuting attorney, should be doing to prosecute the case. Mr. Knoll's argument is that for the conversations that he legally recorded, his own telephone conversations, he legally records those. If those are subsequently duplicated, that's a violation of the Act. By the same token, I submit that if the government legally taps a phone, other people's calls, but gets a court order to legally tap it, if somebody else then duplicates that tape recording or uses the information on that, that is a violation of the Wiretap Act. That's their theory here, that a tape recording of a telephone call legally made because one of the parties consents to it, Mr. Knoll, when that tape is subsequently used or disclosed or manually copied or written down into a memo, that's a violation of the Wiretap Act. And I submit there's nothing in the legislation itself or in the legislative history that suggests Congress had any notion that a legally intercepted telephone call could become the basis of a Wiretap Act if it later is used in some way. So there's two kinds of... Well, I see. So you have A calling B, and B, while the conversation is taking place, is recording. Yes. All right. So that's not a violation. That's not a violation of the Wiretap Act. But then if while this is going on, when A calls B, C somehow tapped the wire and records it or listens in, then that's a violation. Yes. But if A calls B, and B makes a tape of that conversation, and then takes the... has a tape of that conversation, and C comes along and That's not a violation. I don't think it's a violation of the Act. Okay. The issue that – and I guess if it was, then in any wiretap prosecution, whether it's civil or criminal, almost anybody taking any action, especially in this case lawyers, taking the action to prosecute, would be violating the Act because the statute doesn't specifically say that you can use the illegally recorded telephone calls to prosecute. Legislative history makes that clear, and it seems obvious that the only way you could prosecute would be to, at some level, use the illegally intercepted calls. That's all Mr. Weiser did. He adequately and appropriately advised his client to... Well, yeah, he's your client, right? The lawyer is, yes, Your Honor. Yeah, but then when the lawyer tells Ms. Hall that she can use that tape recording to get some leverage in bargaining, isn't that extortion? But, Judge, I guess that's not what the allegation was. The allegation that Mr. Weiser himself did it, and the evidence in the record of what he did was he brings the claims. He brings wiretap Act claims and then offers a settlement. If a lawyer prosecuting a valid claim – we know it's valid because he was found liable – prosecuting a valid claim and offering to compromise that claim is extortion, then not only are lawyers extorting people daily, but the court's encouraging them to do it. That's what happened? Right. That's what the record is, is that this, quote-unquote, extortion or blackmail was really all about Mr. Weiser brings the claims, offers to compromise, walk away, realizing it was a very expensive force, a lot of money on the table, but he was willing to compromise by walking away from them. That's the nature of the blackmail and extortion claims. That's the nature of the predicate Act under the RICO claim that he wants to bring, the 153-page complaint that he's saying he should have been allowed to file because he's got predicate Acts in the form of settlement offers. It's – it doesn't even rise to the level of getting past a motion to dismiss if you've been allowed to plead the claim. The tandem issue that I'd – that we've also asked the Court to look at didn't have to be reached by the district court, either by Judge Ashmanskas or by Judge Hagerty, about the prosecution privilege. The legislative history clearly recognizes that, of course, there's a prosecution privilege. Now, there are cases the other way. Nix v. O'Malley says that the defense lawyers went too far. Well, of course, the defendant's lawyers maybe have some leverage reason of trying to excessively use the illegal intercepted communications to hurt the plaintiff who's suing. But implicitly, lawyers have to be able to use the communications at some level, whether you quote them in a case is maybe another question, although I'd submit that the Supreme Court of the United States has regularly, in wiretap cases, quoted exactly what is said. Is that itself a violation of the Wiretap Act because the Court has used the communication? Of course not. It's part of the litigation. It's the parties reasonably using what they have to do to prosecute the case, the Court, to decide the case. That's what Mr. Weiser did in this case. You're over your time. I'm sorry. Thank you. I think it's 20 minutes, Judge. I'm sorry. Well, you've got a little time left. I think I thought I had just a little under 11 minutes, Judge. I don't know if I'm going to use the whole thing or not. Well, you have under 11 minutes? How much time do we give you? 20. Well, why don't you save it for next time you come to this Court? I'll do that, Judge. Yeah, we'll give you credit. You want that in writing? In 1989, Congress amended this law to provide for means by which if you think there's been an illegal wiretap, you can go and get a court order that allows you to, in fact, intercept that communication to determine whether, in fact, there was an illegal wiretap. That is what should have been done in this instance. Mr. Weiser had no right. He broke the law by directing someone else to take it into their own hands to intercept these communications. This is a subsequent interception of Mr. Knoll's private conversations that he's a party to. The law says, describes it as communication, a communication. Secondly, under Smith, this situation is virtually identical to Smith, where somebody else later breaks in and takes the contents, intercepts it wrongfully. Thirdly, under Gonzalo. Yes. Yes. Well. Well, except the voicemail would be no different if you chose to not erase it. But I think, number one, Mr. Knoll submitted an affidavit, which is unrefuted in this case, that it was, there's no showing, there's a question of fact as to whether it was permanent or temporary. And his affidavit, I believe, sets forth that it was. Was what? Temporary. Well, that's the conclusion. What did he say? I only need to keep these tapes temporary? Well, I'd have to go back and look at it. In both Nix and versus O'Malley and Williams-Polos, the court held the attorney, in fact, went too far with using information that had been derived from an intercepted communication. That's the same situation that happened here in the previous state court case. They used intercepted communication to get a judgment against him. They also used perjured testimony, which is in the record by Ms. Leonard, saying that Mr. Knoll's voice didn't appear on any of these tapes, even though the judge says, well, now, maybe it's on there a couple times. Nobody knows for sure. There was no court order authorizing the use of that information. And equally important, when Mr. Weiser was deposed, there's no way to tell whether the tapes were altered. He had no idea of when Leonard's did it, whether she changed them, whether she deleted part, how accurate of a recording or duplication was made when she intercepted these communications. This opens up all kinds of problems for a trial court when trying to figure out, well, what was on the original and what's on the copy. This court should reverse the trial court to prevent this from becoming a precedent, not only in Oregon but for other jurisdictions in this area. All right. Thank you very much. Thank you. All right. These matters will stand submitted. We'll recess until 9 a.m. tomorrow morning. Thank you.
judges: Pregerson, Reinhardt, Strom